# UNITED STATES DISTRICT COURT

for the

*Western* District of *North Carolina*

*Charlotte* Division

| | | |
|---|---|---|
| Donna Cunningham | ) | Case No. 3:21-cv-607-FDW |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| **Plaintiff(s)** | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| Equal Employment Opportunity Commission | ) | |
| | ) | **FILED** |
| | ) | CHARLOTTE, NC |
| | ) | |
| | ) | **NOV -9 2021** |
| **Defendant(s)** | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | US DISTRICT COURT |
| *names of all the defendants cannot fit in the space above, please* | ) | WESTERN DISTRICT OF NC |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Donna Cunningham |
| Street Address | 7109 Meadowland drive |
| City and County | Charlotte |
| State and Zip Code | North Carolina, 28215 |
| Telephone Number | (980) 949-1451 |
| E-mail Address | donnasworld1@icloud.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | Charlotte A. Burrows |
| Job or Title *(if known)* | Chair |
| Street Address | 131 M Street NE |
| City and County | Washington |
| State and Zip Code | DC, 20507 |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 2**

| | |
|---|---|
| Name | Stan Pietrusiak |
| Job or Title *(if known)* | Director |
| Street Address | 131 M Street NE |
| City and County | Washington, |
| State and Zip Code | DC, 20507 |
| Telephone Number | (202) 663-4674 |
| E-mail Address *(if known)* | STAN.PIETRUSIAK@eeoc.gov |

**Defendant No. 3**

| | |
|---|---|
| Name | Reuben Daniels |
| Job or Title *(if known)* | Director |
| Street Address | 129 W Trade St, Suite 400 |
| City and County | Charlotte |
| State and Zip Code | NC, 28203 |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 4**

| | |
|---|---|
| Name | Ava Marrow |
| Job or Title *(if known)* | Supervisor |
| Street Address | 129 W Trade St, Suite 400 |
| City and County | Charlotte |
| State and Zip Code | NC, 28203 |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*Retaliation, abuse of power, slander*

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual
      The plaintiff, *(name)* Donna Cunningham, is a citizen of the State of *(name)* North Carolina.

   b. If the plaintiff is a corporation
      The plaintiff, *(name)* Donna Cunnigham, is incorporated under the laws of the State of *(name)* North Carolina, and has its principal place of business in the State of *(name)* Washington DC.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual
      The defendant, *(name)* Ava Marrow, is a citizen of the State of *(name)* North Carolina. Or is a citizen of *(foreign nation)*

b.  If the defendant is a corporation

The defendant, *(name)* _Equal Employment Opportunities Commission_, is incorporated under

the laws of the State of *(name)* _North Carolina_, and has its

principal place of business in the State of *(name)* _Washington, DC_

Or is incorporated under the laws of *(foreign nation)*

and has its principal place of business in *(name)* _Atlanta, GA_

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

_3,500,000.00_

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Donna Cunningham was subjected to an illegal background check without her permission with Malice and evil Intent. Donna Cunningham filed many compliants regarding her protected civil rights and privacy being violated with federal and local organization. The EEOC put in place a plan of retaliation to protect the name an reputation of the organization and Ava Marrow, Reuben Daniels, Stan Pietrusiak, Charlotte Burrows & Darrell Graham.

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

The defendants engaged in acts of intentional tort and im wanton and willful misconduct to support the wrong doing of the EEOC and other organizations working in collusion. This deliberate and sustained effort damaged my reputation and credibility. The defendants were aware of this action which cause a financial hardship, mental and physical damages which have cause me damages at more than $3,500,000.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      ~~08/30/2021~~  *error DBC*  11/06/2021

Signature of Plaintiff

Printed Name of Plaintiff      Donna Cunningham

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 201
Washington, D.C. 20036-4505
(202) 804-7000

April 30, 2021

Ms. Donna S. Cunningham
3357 Bonneville Drive
Charlotte, NC 28205

Sent via email to: donnastonec1@gmail.com

Re: OSC File No. MA-20-000280

Dear Ms. Cunningham:

By letter dated March 26, 2012, we informed you of our preliminary determination not to take any further action on your complaint to this Office. You were notified that you had thirteen (13) days to respond to this letter. During a telephone conversation with this Office on April 6, 2021, you requested additional time to submit a written response. You were granted an extension until April 16, 2021, to submit a written response. On April 8, 2021, during a telephone conversation, you requested an extenson for 30 or more days. You were informed that that we would not hold the file open until that time and you were granted a second extension until April 23, 2021. However, as of this date, we have not received any comments or any other information from you concerning our preliminary determination letter.

Accordingly, for the reasons stated in our preliminary determination letter of February 18, 2021, we are closing the file.

Despite OSC terminating its inquiry into your complaint, you may have a right to seek corrective action directly from the Merit Systems Protection Board (Board) under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221 because you alleged retaliation for protected disclosures or activities. You may file a request for corrective action, commonly referred to as an Individual Right of Action (IRA) appeal, with the Board within 65 days after the date of this letter. The Board regulations concerning your right to file an IRA appeal can be found at 5 C.F.R. Part 1209. Attached please find a separate letter further explaining your IRA appeal rights.

Sincerely,

Angela D. Rush
Case Review Specialist
Investigation & Prosecution Division

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was provided to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Donna S. Cunningham
3357 Bonneville Drive
Charlotte, NC 28205
Via U.S. Mail

Stan Pietrusiak, Director
Office of Equal Opportunity
Equal Employment Opportunity Commission
Via FedSEP

August 9, 2021
Date

Compliance and Control Division



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington, DC 20507**

Donna S. Cunningham a/k/a
Angelica P.,[1]
Complainant,

v.

Charlotte A. Burrows,[2]
Chair,
Equal Employment Opportunity Commission,
Agency.

Appeal No. 2020000884

Agency No. 2016-0026

## DECISION

Complainant timely filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's October 31, 2019, final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. For the following reasons, the Commission AFFIRMS the Agency's final decision.

## ISSUES PRESENTED

The issues presented on appeal are: (1) whether the Agency properly dismissed several claims for untimely EEO Counselor contact; and (2) whether the preponderance of the evidence in the

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

[2] In the present matter, the Equal Employment Opportunity Commission (EEOC) is both the respondent Agency and the adjudicatory authority. The Commission's adjudicatory function is separate and independent from those offices charged with in-house processing and resolution of discrimination complaints. For the purposes of this decision, the term "Commission" is used when referring to the adjudicatory authority and the term "Agency" is used when referring to the respondent party in this action. The Chair has abstained from participation in this matter.

record establishes that Complainant was subjected to discrimination based on race, sex, disability, age, and/or reprisal.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a GS-1802-7 Investigator Support Assistant (ISA) at the Agency's District Office in Charlotte, North Carolina. In or around October 2015, the Intake Supervisor (S1) became Complainant's first-line supervisor. On January 20, 2016, the Enforcement Supervisor (S2) became Complainant's new first-line supervisor. Complainant's second-line supervisor was the Charlotte Deputy District Director (S3), and her third-line supervisor was the Charlotte District Director (S4).

Complainant is an African-American female and, at the time of events giving rise to this complaint, she was 50 years old. Complainant had previously filed an EEO complaint in 2014, which she settled with the Agency. Complainant identified her disabilities as depression and anxiety due to work stress.

Complainant averred that, in February 2016, she told S2 that she was experiencing paranoia. According to the record, Complainant also has a sleep disorder. Complainant stated that she was associated with two family members with disabilities: her son, who has a mental disability, and her father, who was diagnosed with heart failure and was hospitalized in February 2016.

According to the Charlotte District Resource Manager (DRM), during the time of events giving rise to this complaint, Charlotte-based employees were directed to submit requests for Family and Medical Leave Act (FMLA) leave and supporting medical documentation to her. However, the DRM stated that some employees gave their FMLA requests to their supervisors or to Headquarters personnel, who would forward it to the DRM. The DRM averred that, at various points in 2015 and 2016, Complainant requested FMLA leave for her son, for her father, and for herself.

The DRM stated that Complainant submitted an FMLA leave request to care for her son on December 1, 2015. According to the DRM, on December 1, 2015, she told Complainant that the medical provider had used an outdated FMLA form and had erroneously provided information about Complainant instead of her son. The DRM averred that she also provided Complainant with the correct form. According to the DRM, on December 7, 2015, Complainant attempted to fax another FMLA form to the DRM, but the fax was sent to another Agency fax number. The DRM stated that the December 7, 2015, fax was eventually forwarded to her, but she stated that she told Complainant that the fax was illegible. According to the DRM, Complainant never followed up to provide a legible form to request FMLA leave for her son. The DRM averred that it is the responsibility of the employee to follow up on their own FMLA requests, so she did not pursue the matter further with Complainant.

Complainant alleged that, starting in February 2016, the Charlotte District Office hired an investigator from a law firm located in the same office building to follow her every time she

shopped at Food Lion, a grocery store. Complainant stated that Charlotte District Office management also hired a "fixer" to stalk her, to interfere with her bills, to interfere with her driver's license, and to pay people or actors to stage situations and make Complainant and her family members look bad. Complainant speculated that the individual may have been a federal law enforcement officer or someone from the Charlotte-Mecklenburg Police Department. S4 denied that the Agency hired individuals to follow Complainant into grocery stores or to otherwise interfere in Complainant's personal life.

On February 8, 2016, S2 issued Complainant a memorandum about her leave use. In the memo, S2 stated that Complainant had requested 88 hours of unscheduled sick leave from January 25 through February 8, 2016 and had exhausted her sick leave balance. According to S2, during her extended absence, Complainant had sent daily emails saying that she would not be coming to work, but she had provided little to no documentation supporting the various reasons for her absences. S2 noted that Complainant made a brief reference to FMLA in one email. S2 directed Complainant to the sections of the collective bargaining agreement (CBA) covering sick leave and FMLA. S2 averred that, if Complainant did not return to work on February 9, 2016, she would need to provide appropriate medical documentation.

According to the DRM, she did not hear from Complainant about FMLA again until February 9, 2016. Complainant had emailed S2 on February 8, 2016, requesting FMLA leave to care for her father after he was discharged from the hospital. The DRM stated that she emailed Complainant on February 9, 2016, providing information about FMLA and the relevant FMLA forms. On February 22, 2016, Complainant sent a fax to the Charlotte District Office, which included an FMLA certification form for Complainant's son that appears to have been signed on January 20, 2016. Report of Investigation (ROI) at 99-101. According to the DRM, the February 22, 2016, fax went to the intake area. The DRM averred that the form was still not legible. On February 26, 2016, a medical provider faxed the Charlotte District Office an FMLA certification form for Complainant's father that was signed on February 24, 2016. ROI at 103-08. However, the provider had used the certification form for FMLA leave for self, rather than for a family member.

On March 2, 2016, S2 sent Complainant an email notifying her that S2 was issuing her a Notice of Leave Restriction. In the email, S2 stated that Complainant's request for leave for February 29 and March 1, 2016, was tentatively approved, subject to submission of acceptable medical documentation. S2 averred that, because Complainant had mentioned family medical issues, she was attaching FMLA applications for FMLA leave for self and for a family member. In the attached Notice of Leave Restriction, S2 noted that Complainant had used 224 hours of annual or sick leave for the 224 scheduled work hours during 28 consecutive workdays. S2 added that Complainant had also failed to follow the proper procedures for requesting leave. On March 2, 2016, Complainant responded to S2's email, stating that, to her knowledge, she had already submitted FMLA documents and doctors' notes. S2 averred that, when she placed Complainant on leave restriction, Complainant had not been approved for FMLA leave for herself or for a family member.

Complainant alleged that some of her coworkers were not issued leave restrictions or required to apply for FMLA leave when they needed to take leave for their own medical issues or to care for a family member. Complainant averred that employees who had family members with medical issues or even pets with special needs were granted flexibility with leave without applying for FMLA leave. According to Complainant, she was a timekeeper, so she was aware of five employees who were treated more favorably with respect to leave. S3 stated that he was not aware that these employees had attendance concerns at the time of events giving rise to the instant complaint. S3 averred that Complainant was placed on a leave restriction because she was not complying with the Agency's policies regarding leave and attendance. The DRM denied that any employee who did not apply for FMLA leave was granted FMLA leave.

Complainant also averred that she was required to repeatedly submit and re-submit her FMLA requests and medical documentation when it was lost or misplaced by the Charlotte District Office. S2 and the DRM denied losing or misplacing Complainant's FMLA documents or medical documents. According to the DRM, some of Complainant's FMLA forms were sent to fax numbers such as the Charlotte intake area instead of to the DRM's secure fax number, but she received all the FMLA forms and documents that were received in the Charlotte District Office. S2 stated that Complainant rarely provided medical documentation and that she forwarded any documentation to the DRM. The DRM averred that she asked Complainant to resubmit her FMLA forms and to provide additional medical documentation when the FMLA forms were incomplete, when the medical provider had used the wrong FMLA form, and when the documentation was illegible or missing pages.

On April 1, 2016, Complainant emailed the DRM, attaching corrected FMLA forms and asking for an update regarding the attached FMLA leave request as well as her previously submitted request for intermittent FMLA leave to care for her father. The DRM stated that she consulted a Human Resources Specialist (HR1) about the FMLA request for Complainant's father and that HR1 told her that Complainant needed to provide a medical provider certification for her father. On April 4, 2016, the DRM responded to Complainant, stating that the FMLA leave request could not be approved at that time based on the documentation submitted. The DRM noted that the medical provider had included a future date as one of the dates the provider had treated the patient. The DRM also stated that the medical provider needed to be more specific regarding the type of assistance Complainant would need to provide for her father. Complainant replied the same day, stating that she would resubmit the forms but noting, "I am currently using his [Complainant's father] existing intermittent FMLA leave which is in effect until July 2016. These forms have already been submitted and are good for 12 months." ROI at 222. The DRM responded the same day, stating that she did not have a record of any approved FMLA requests for Complainant and asking if Complainant could send any documents showing that she had been approved for FMLA leave in 2015. According to the DRM, Complainant did not provide any documents reflecting approved FMLA leave in 2015.

Complainant alleged that, on April 8, 2016, she was subjected to unwelcome comments of a sexual nature by an Investigator (C1) and an Office Automation Assistant (C2). S2 stated that, on April 11, 2016, Complainant emailed her and stated that C1 and C2 had subjected her to

unwelcome comments of a sexual nature on April 8. S2 averred that Complainant reported that C1 and C2 referenced being married, "boy toys," one-night stands, and balloons, and that C1 and C2 should have known that the comments were not welcome based on her facial expressions. According to S3, Complainant reported that C1 and C2 harassed her, although she could not remember the exact comments. S3 averred that C2 also complained about Complainant. S3 stated that, after investigating both Complainant and C2's complaints, it appeared that Complainant and C2 had grown to dislike each other after being friendly for years. S3 stated that he forwarded his investigation of Complainant's harassment complaint to the Agency Harassment Coordinator (HR2), who determined that there was no merit to Complainant's harassment claim. The record contains a September 6, 2016, memorandum from S4 to Complainant, discussing HR2's findings regarding Complainant's harassment complaint.

According to Complainant, in April 2016, a coworker told her that the Charlotte District Office was investigating Complainant for unethical behavior, even though management had never disclosed any investigation or discussed any potentially unethical behavior with her. Complainant averred that S1 and/or S4 may have been retaliating against her and fabricating evidence to make her look bad. S4 stated that, after Complainant complained that she had been harassed by C1 and C2, management investigated the allegations and found them to be unfounded. According to S4, C1 and another Investigator (C3) reported being harassed and bullied by Complainant, and, as a result, Complainant was issued a Letter of Reprimand on August 10, 2016, and was placed on administrative leave on August 24, 2016. According to Complainant, S1 harassed her, including on June 18, 2016, when S1 yelled at her and threw a "temper tantrum" because Complainant had stapled the intake paperwork. S3 and S4 denied knowledge of S1 yelling at Complainant or harassing her. S4 noted that S1 stepped back from her supervisory role in part because she found it challenging to manage Complainant and another ISA (C4).

The DRM stated that Complainant resubmitted her FMLA request for her father on April 28, 2016. The DRM averred that HR1 consulted his supervisor, the Assistant Director of Employee & Labor Relations (HR3), regarding this FMLA request. According to the DRM, on a conference call with S4 and HR3, HR3 informed her that Complainant had provided a medical certification with enough information to evaluate Complainant's FMLA request for her father. The DRM averred that HR3 did not address Complainant's FMLA request for her son. On June 27, 2016, Complainant emailed the DRM, asking for an update on the FMLA leave requests she had submitted in January and February 2016. The DRM stated that she emailed Complainant on June 28, 2016 and told her that her FMLA request for her father had been approved.

On August 10, 2016, S2 issued Complainant a Letter of Reprimand. In the Reprimand, S2 stated that she received complaints from multiple employees that, while sitting in the intake area on July 25, 2016, Complainant was loudly singing, "My God is great! You better watch your ass for defaming my character." ROI at 232. S2 averred that Complainant repeated these words multiple times to no one in particular, disrupting the office environment and making

some of her colleagues uncomfortable. On August 17, 2016, C1 emailed S2, S3, and S4. In the email, C1 stated that Complainant had harassed her on August 16, 2016, that she felt threatened by Complainant, and that she wanted to file a formal complaint.

On August 24, 2016, S4 issued Complainant a notice that she was being placed on administrative leave for August 25 and 26, 2016, pending the outcome of an investigation of her behavior. In the notice, S4 stated that Complainant's behavior in the intake area on August 23 and 24, 2016, was concerning and led to multiple complaints from employees that Complainant had treated them in a hostile manner. S4 averred that, unless she (Complainant) was told otherwise, she would be expected to return to work on August 29, 2016.

On August 29, 2016, Complainant emailed S2, stating that she would not be coming into work because she was experiencing extreme anxiety as a result of harassment in the workplace and requesting sick leave. Complainant averred that she would seek medical attention and provide an update. Complainant sent another email on August 30, 2016, stating that she would not be coming to work because of anxiety and that she was requesting leave. On August 31, 2016, Complainant emailed S2 a doctor's note excusing her from work "due to medical issues" from August 29 through September 16, 2016. ROI at 243. On September 1, 2016, S2 emailed Complainant, stating that the doctor's note did not constitute acceptable medical documentation under her leave restriction. S2 averred that Complainant would be charged absent without leave (AWOL) until acceptable medical documentation was received.

On September 1, 2016, Complainant emailed the DRM, S2, and S3, requesting FMLA forms, which Complainant stated "should satisfy the sick leave requirements." ROI at 245. The DRM emailed Complainant the forms later that day. On September 19, 2016, the DRM received a completed form for Complainant from her primary care physician. On September 20, 2016, the DRM emailed Complainant, stating that the FMLA request could not be approved because it did not contain enough information. The DRM averred that the form stated that Complainant had been referred to a psychiatrist but that the form did not state any relevant medical information regarding symptoms or diagnosis, did not state the expected duration of treatments, and did not specify which essential functions of her job that Complainant was not able to perform.

On September 20, 2016, Complainant asked the DRM to send her feedback on the FMLA form and a copy of Complainant's position description directly to her medical provider. On September 21, 2016, the DRM emailed Complainant and stated that, as a courtesy, she would contact Complainant's medical provider, noting, "However, this is your request and you will need to follow up with your physician on the resubmission." ROI at 268. The DRM stated that she faxed a letter requesting the changes, the original form, and a copy of the position description to Complainant's medical provider on September 21, 2016, and that she received the form with additional information on September 30, 2016.

According to the DRM, she sought assistance from Labor Management, who advised her to tell Complainant that the September 30, 2016 form still was incomplete because it did not

describe how her medical condition impacted her ability to perform the essential duties of her position. On October 11, 2016, the DRM emailed Complainant, explained that the FMLA request was incomplete, and asked her to resubmit the FMLA request with information about how her medical condition affected her ability to perform the essential duties of her position. Complainant asked the DRM to send the documents to her medical provider's office, but on October 11, 2016, the DRM replied that it was Complainant's responsibility to do so. The DRM stated that, on October 31, 2016, she received a fax, which contained two pages of the FMLA provider certification. According to the DRM, she emailed Complainant on November 9, 2016, stating that, although the cover sheet of the October 31, 2016 fax said the transmission would be five pages including the cover, the DRM only received three pages. The DRM averred that Complainant did not respond to the November 9, 2016 email.

*Procedural History*

On January 11, 2016, Complainant initiated contact with an EEO Counselor. On April 15, 2016, Complainant filed an EEO complaint, which she subsequently amended, alleging that the Agency discriminated against her on the bases of race (African-American), sex (female), disability (mental disability and association with family member with disabilities), age (50), and reprisal for prior protected EEO activity under Title VII of the Civil Rights Act of 1964 when[3]:

    1.    In 2013 and 2014, Complainant received negative performance evaluations as a result of her prior EEO complaint;

    2.    Complainant's May 2014 request for telework as a reasonable accommodation was ignored by the Agency;

    3.    In 2014, Complainant's lunch break was monitored;

    4.    In 2014 and 2015, Complainant was investigated by Charlotte District Office management for unethical behavior;

    5.    Complainant was subjected to unfair scrutiny of her work and home life activities, including in March 2014 when a Charlotte District Office IT Specialist attempted to hack into Complainant's personal email account and in August and September 2015 when a coworker monitored Complainant's Facebook account and a Charlotte District Office manager changed the login information for Complainant's online banking account;

    6.    On August 21, 2015, a colleague told Complainant that Charlotte District Office management believed that Complainant sent an anonymous complaint to Agency Chair Jenny Yang regarding unfair treatment by Charlotte District Office management;

    7.    From December 2015 through April 2016, Complainant was required to submit numerous FMLA leave requests for herself and her family members while other Charlotte District Office employees were not required to apply for FMLA leave;

---

[3] This recitation of the complaint includes the claims that subsequently were dismissed, as discussed in the text, infra.

8.    From December 2015 through April 2016, Complainant was required to submit and resubmit FMLA documents after her FMLA documents were repeatedly misplaced by the Charlotte District Office;

9.    From December 2015 through April 2016, the Charlotte District Office overly scrutinized Complainant's FMLA documents and requests, ultimately rejecting her FMLA requests regarding her father and her son in April 2016;

10.   Since February 2016, the Charlotte District Office hired an investigator from a law firm to follow Complainant every time she visits the Food Lion grocery store;

11.   Despite invoking the FMLA process, on March 2, 2016, Complainant's supervisor placed her on leave restriction;

12.   In or around April 2016, the Charlotte District Office investigated Complainant for unethical behavior;

13.   On April 8, 2016, Complainant was subjected to a "sexually tainted" work environment characterized by unwelcome comments from two coworkers;

14.   On June 18, 2016, Complainant was yelled at by the Intake Supervisor because the intake paperwork was stapled;

15.   On August 10, 2016, Complainant was issued a Letter of Reprimand; and

16.   On August 24, 2016, Complainant was placed on administrative leave.[4]

On October 26, 2016, the Agency dismissed Complainant's EEO complaint pursuant to 29 C.F.R. § 1614.107(a)(7) for failure to respond to a written request for information. Complainant timely appealed the dismissal of her complaint to the Commission. On appeal, the Commission reversed the Agency's dismissal and remanded the matter for an investigation of Complainant's complaint. EEOC Appeal No. 0120170446 (Dec. 18, 2017).

On remand, the Agency dismissed allegations (1) through (6) pursuant to 29 C.F.R. § 1614.107(a)(2) for untimely EEO Counselor contact, but processed the remaining claims. At the conclusion of the investigation into the remanded claims, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). When Complainant did not request a hearing within the time frame provided in 29 C.F.R. § 1614.108(f), the Agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b). The decision concluded that Complainant failed to prove that the Agency subjected her to discrimination as alleged. The instant appeal followed.

---

[4] Complainant's allegations have been renumbered in chronological order.

## CONTENTIONS ON APPEAL

On appeal, Complainant contends that the Agency abused its power, fabricating evidence and raising false accusations against her.[5] Complainant accuses the Agency of interfering with her subsequent employment with other employers, her medical care, and her mortgage. Finally, Complainant argues that she was subjected to sexual harassment and that the Agency ignored her attempts to file a sexual harassment complaint.

The Agency did not submit a statement or brief in response to Complainant's appeal.

## STANDARD OF REVIEW

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a).  See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

## ANALYSIS AND FINDINGS

*Procedural Dismissals*

The Agency dismissed allegations (1) through (6) for untimely EEO Counselor contact. EEOC Regulation 29 C.F.R. § 1614.107(a)(2) states that the Agency shall dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in § 1614.105, § 1614.106 and § 1614.204(c), unless the Agency extends the time limits in accordance with § 1614.604(c). EEOC Regulation 29 C.F.R. § 1614.105(a)(1) provides that an aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. EEOC Regulation 29 C.F.R. § 1614.105(a)(2) allows the Agency or the Commission to extend the time limit if the complainant can establish that Complainant was not aware of the time limit, that Complainant did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence Complainant was prevented by circumstances beyond her control from contacting

---

[5] These contentions were submitted with Complainant's November 9, 2019 notice of appeal. The Commission denied Complainant's request for an extension of time to submit a brief in support of her appeal because she submitted her request after the deadline for submission brief had already passed.

the EEO Counselor within the time limit, or for other reasons considered sufficient by the Agency or Commission.

The dismissed allegations concern events that took place between 2013 and August 21, 2015. Complainant did not request EEO counseling until January 11, 2016 and has provided no justification for failing to timely contact an EEO Counselor regarding these matters. Accordingly, we affirm the Agency's dismissal of allegations (1) through (6).

*Disparate Treatment and Harassment*

Complainant's complaint includes claims of disparate treatment and harassment, and bases including reprisal. We set forth the applicable law below.

To prevail in a disparate treatment claim, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). She must generally establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978). The prima facie inquiry may be dispensed with when the Agency has articulated legitimate and nondiscriminatory reasons for its conduct. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Dep't of Veterans Affairs, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Holley, supra; Pavelka v. Dep't of the Navy, EEOC Request No. 05950351 (Dec. 14, 1995).

To establish a claim of harassment a complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982). Further, the incidents must have been "sufficiently severe or pervasive to alter the conditions of [complainant's] employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances. Enforcement Guidance on Harris v. Forklift Systems Inc., EEOC Notice No. 915.002 at 6 (Mar. 8, 1994).

Reprisal claims are considered with a broad view of coverage. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006); see also Carroll v. Dep't of the Army,

EEOC Request No. 05970939 (Apr. 4, 2000). Retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment. Id. Rather, a complainant is protected from any discrimination that is reasonably likely to deter protected activity. Id.; see also Carroll, supra.

Complainant alleged that she was subjected to discrimination when she was required to submit FMLA leave requests for her own medical condition and to care for her family members with medical conditions. The Agency's legitimate, nondiscriminatory reason for requiring Complainant to apply for FMLA leave is that such leave could only be granted if the request was supported by medical certification under the statutory FMLA criteria. Although Complainant asserts that she knows that other employees did not have to apply for FMLA leave because she was a timekeeper and saw these employees' time and attendance, she has not established by preponderant evidence that her comparators did not have to apply for FMLA leave or provide medical documentation for extended sick leave. As the Agency noted in its final decision, as a timekeeper, Complainant would not have had knowledge of or access to medical documentation or FMLA forms submitted by the asserted comparators. Accordingly, we find that Complainant has not established that she was subjected to discrimination as alleged in this claim.

Complainant also alleged that she was discriminated against when she was asked to repeatedly submit and resubmit her FMLA forms and medical documentation after the Agency lost or misplaced her submissions. The Agency's legitimate, nondiscriminatory explanation for asking Complainant to resubmit her FMLA forms and for additional medical documentation was that Complainant's submissions were incomplete, illegible, and/or completed on the wrong forms. Although the record reflects that Complainant and some medical providers submitted forms and documentation to fax numbers other than the DRM's secure fax numbers, the preponderance of the evidence in the record establishes that the DRM received all these submissions. They were not lost or misplaced. Complainant has not submitted evidence to establish that this explanation is pretextual. We therefore find that Complainant has not established by that she was subjected to discrimination as alleged in this claim.

Complainant alleged that she was subjected to discrimination when her requests for FMLA leave were subjected to excessive scrutiny and when her requests for FMLA leave were denied in April 2016. Regarding this allegation, we find that Complainant has not established a prima facie case of disparate treatment. The preponderance of the evidence in the record does not establish that her FMLA documents were subjected to excessive scrutiny. As discussed above, Complainant was directed to change or provide additional documentation when the documents she provided could not be read or did not contain all the needed information. Regarding April 2016, preponderant evidence in the record establishes that none of Complainant's FMLA requests were denied at that time.

Complainant alleged discrimination with respect to her March 2, 2016, placement on leave restriction. The Agency's legitimate, nondiscriminatory reason for placing Complainant on leave restriction was that she had taken extended unscheduled leave and had not provided the

required medical documentation. As evidence of pretext, Complainant asserts that she had submitted FMLA leave requests and that the Agency's real reason for the leave restriction was her association with individuals with disabilities: her son and her father. Although Complainant had submitted FMLA requests, her submissions had not been approved as of March 2, 2016, because, as discussed above, her requests were incomplete and/or illegible. Moreover, the record contains Complainant's emails to S2 concerning her absences in January and February 2016. Complainant's requests for leave were rarely supported by medical documentation, and, when medical documentation was provided, it was either illegible or did not comply with the requirements for FMLA leave under the CBA. Accordingly, we find that Complainant has not established that she was subjected to discrimination as alleged in this claim.

Complainant alleged that she was discriminated against when she received a Letter of Reprimand. The Agency's legitimate, nondiscriminatory reason for issuing Complainant the Letter of Reprimand was that Complainant had caused a disturbance in the intake area. Although Complainant asserted that she was merely singing a song with the door closed, we note the multiple complaints the Agency received from other employees regarding this incident.  We therefore find that Complainant has not established by preponderant evidence that the Agency's legitimate, nondiscriminatory reason for issuing the reprimand was pretextual, and therefore has not established that she was subjected to discrimination as alleged in this claim.

Complainant also alleged discrimination with respect to being placed on administrative leave. The Agency's legitimate, nondiscriminatory reason for placing Complainant on administrative leave was that multiple employees, including C1 and C3, had reported feeling threatened by Complainant's conduct in the workplace. Complainant attempts to prove pretext by asserting that she was polite and that she was the one being harassed by her coworkers. Again, we note the multiple complaints received by the Agency regarding Complainant's conduct and find that Complainant has not established pretext, nor that she was subjected to discrimination as alleged in this claim.

In addition to the allegations analyzed above as disparate treatment claims, Complainant alleged that the Agency hired an investigator to follow her in the grocery store, that the Agency investigated her for unethical conduct, and that she was yelled at by S1 for stapling some paperwork. Complainant also alleged that she was subjected to sexual harassment by C1 and C2.

Regarding the first allegation, there is no evidence in the record other than Complainant's bare assertion that the Agency hired an investigator to follow her in Food Lion, hired anyone to interfere in Complainant's personal life, or interfered in her employment after leaving the Agency. Accordingly, we find that Complainant has not established by preponderant evidence that this harassment occurred as alleged.

Complainant asserted that the Agency was investigating her for unethical conduct in April 2016, but there is no evidence in the record that establishes that the Agency was conducting

such an investigation at this time. We therefore find that Complainant has not established that this harassment occurred.

Complainant alleged that, on June 18, 2016, S1 yelled at her for stapling her intake paperwork. Assuming for the purposes of this decision that S1 did yell at Complainant, there is no evidence in the record connecting this incident to Complainant's race, sex, age, disability, and/or protected EEO activity. Accordingly, Complainant has not established that this incident constituted harassment based on her membership in any protected class.

Finally, Complainant alleged that she was subjected to sexual harassment by C1 and C2. Complainant contends on appeal that the Agency would not allow her to file a claim of sexual harassment. However, management investigated her allegation and submitted the matter for consideration by HR2, the Agency's Harassment Coordinator, and this claim was also accepted and fully investigated as part of the instant EEO complaint. Regarding the harassment itself, Complainant stated that C1 and C2 subjected her to crude, sexual language on April 8, 2016. However, C1 and C2 stated that they were having a conversation about their husbands and relationships in a private office with the door closed. C1 stated that she told C2 that marriage was overrated and that C2 needed a "boy toy." According to C1 and C2, Complainant opened the door to the private office, left the private office, then returned and inserted herself in their conversation. C1 and C2 stated that Complainant did not verbally object to the conversation and also did not appear to be upset. Upon review, Complainant has not established by preponderant evidence that she was subjected to sexual harassment as alleged.

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final decision finding that Complainant did not establish that she was subjected to unlawful discrimination, as alleged.

### STATEMENT OF RIGHTS - ON APPEAL
### RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or**

**brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or

costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Digitally signed by
RACHEL SEE
Date: 2021.08.06
08:51:57 -04'00'

Rachel See
Acting Executive Officer
Executive Secretariat

August 6, 2021
Date